GULOTTA, Judge.
This suit is for damages based on a written contract dated March 25, 1967, wherein defendant-appellant, Custom Built Homes, Inc., sold a building to plaintiffs, Candace Ann Bordages, wife of/and Ronald Thomas Velasquez, and additionally contracted to move the building onto the plaintiffs’ lot in Jefferson Parish. The contract further provided that defendant-appellant construct a foundation for the building and perform other services.
*700 Plaintiffs brought this action on March 25, 1968, alleging that the defendant failed to do certain work required under the contract and that other work was defective. That portion of plaintiffs’ complaint only pertinent to this appeal is the allegation that defendant failed to comply with the Building Code of the Parish of Jefferson, Ordinance 2225, Article 202, the applicable part of which reads as follows:
* * * * * ,
“Slab Foundation. Top of slab shall be not less than 24" above catch basin or not less than 18" above the curb or crown of paved street at any point\. All streets that are not paved or blacktopped with subsurface catch basin grades are to be established by the Department of Roads and Bridges.
“Piers or Chain Wall Foundation. Underside of sills shall be not less than twenty-four inches (24") above the finish lot grade at front edge of building.” (Emphasis added.)
Plaintiffs allege that the underside of the sills are 15" above grade instead of 24" above grade as required by said ordinance and that defendant is required to comply with the ordinance in that the subject contract incorporates all existing laws. Plaintiffs have itemized the costs to repair the defects in their petition—the total amount being $1,645.00.
The issues before this Court are (1) to determine whether defendant is required to comply with Ordinance 2225 and, in the event that the court so finds, (2) to determine the cost to defendant of repairing the defect resulting from its failure to comply with the Ordinance.
It is an established principal that laws which are existing at the time form part of a contract and are incorporated in it. See: Williston on Contracts, Revised Edition, Volume 3, Section 615; Johnson v. Anderson-Dunham Concrete Co., 212 La. 276, 31 So.2d 797 (1947). These existing laws “form a part of the contract as though expressly written therein”. Dantoni v. Board of Levee Commissioners, 227 La. 575, 80 So.2d 81, 83 (1955), rehearing denied April 25, 1955. At the time plaintiffs and defendant executed the present contract, Jefferson Parish had in effect the Building Code which is subject of this suit providing that buildings had to be set at a particular grade height. Thus, under the aforementioned law, it becomes evident that the provisions of the Building Code regarding grade requirements formed a part of the contract and were incorporated therein as though expressly written.
There was no express provision in the contract specifying which party had the responsibility to comply with the Building Code.
In the absence of a specific contractual provision, custom will prevail. LSA-C.C. art. 1903 states:
“The obligation of contracts extends not only to what is expressly stipulated, but also to everything that, by law, equity or custom, is considered as incidental to the particular contract or necessary to carry it into effect.” (Emphasis added.)
LSA-C.C. art. 1953 further provides that,
“Whatever is ambiguous is determined according to the usage of the country where thfe contract is made.”
The record clearly indicates that it is customary that the contractor comply with the Building Code.
Mr. Adam Clouate, plaintiffs’ expert in the field of general contracting, testified:
“Q. As a general contractor, would you tell me what is the custom in regard to compliance with the various building codes of the Parish of Jefferson or the City of New Orleans.
*701 “A. Well ■the contractor is supposed to comply with them, and he’s supposed to know enough about it to * * * when he goes get the permit, you know, tell them that he can or he cannot do it.
“Q. Well is it the custom for the contractor to comply with the building code or the owner?
“A. Usually the contractor, because he’s supposed to know.” (Emphasis added.)
Mr. David A. Kraus, President of the defendant corporation, testified:
“Q. Do you customarily comply with the Parish building code?
“A. To the best of my knowledge, we have complied with it in almost every case possible.
“Q. Do you consider it your obligation to comply to the code?

“A. I certainly do.

“Q. Your answer is?
“A. Yes.” (Emphasis added.)
Mr. Frederick Wilson, former general manager of the defendant corporation who was in that position in 1967, testified in part as follows:
“Q. Now you say that you were in the contracting business for several years ?
“A. Yes. I was.
“Q. And you were aware of the fact that Jefferson Parish has a building code?
“A. Yes.
“Q. And as a contractor, did you feel you were under an obligation to comply with that code ?
“A. Yes. We have to.
“Q. Is it standard practice for contractors to comply with the building code?
“A. Yes.”
Thus, the record reveals that both of the defendant’s witnesses, Messrs. David A. Kraus and Frederick Wilson, testified that they were aware of the Building Code; that it was standard practice for Custom Built to comply with that Code; that Custom Built attempted to comply with the Code in the instant case; and that the reason for non-compliance was that the superintendent on the job made a mistake in establishing the grade of the house.
In addition to the above testimony indicating that it is the contractor’s responsibility to abide by the Building Code, Custom Built Homes, in its answer to plaintiffs’ original petition, admitted part of plaintiffs’ allegation to be true, to wit, that portion of paragraph 9(a) which referred to defendant’s obligation to raise the house 9 inches above existing sill ,level. In Article XI of its answer, the defendant averred:
“ * * * and respondent has offered in writing to repair the items contained in paragraph 9-(a) of plaintiffs’ petition and remains ready to perform such repairs * * * ”
Considering the foregoing testimony and the implied admission of responsibility by defendant in his answer, we conclude that it is incumbent on the defendant contractor and not the landowner to comply with the Building Code and thus Custom Built Homes must bear the cost of rectifying the defect in the grading. Cleary, the defendant has acknowledged its obligation to raise the structure in conformity with the Building Code.
While the contract placed the responsibility on the owner to fill the lot, the defendant has the responsibility to place the house on the lot up to grade in accordance with the Ordinance. This, Custom Built Homes failed to do. Defendant contends *702 that the house was not up to grade because of plaintiffs’ failure to properly fill the lot. However, the evidence does not support this contention. On the contrary, the evidence shows that plaintiffs were prevented from adding sufficient fill because the defendant placed the house on the lot before the lot was filled, although they had knowledge that the lot was below grade.
The remaining question pertains, to the cost required to raise the structure. The plaintiffs have itemized these costs in their original petition as follows:
9.
“That the costs to finish the work under the contract and to repair the defective work is itemized as follows:
“a.) Raise house 9 inches above existing sill level — Disconnect drains and supply lines — Jack up at level entire house — Install temporary shoring to hold house. Install concrete blocks and caps on all piers to hold 9 inches higher — after mortar is dry remove shoring timbers and lower house. Reconnect all drains and plumbing and wiring. Raise air conditioner unit slab — Raise steps, front and back and owners porch .$1,645.00.”
The plaintiffs produced a contractor, Mr. Adam Clouate, familiar with the New Orleans area who in itemizing the approximate cost of raising plaintiffs’ house gave the trial court an estimate of $1,839.00. It is noteworthy that Mr. Clouate’s estimate was even higher than the itemized cost in plaintiffs’ petition, which was $1,645.00. Yet the defendant termed the $1,645.00 amount, the lower estimate of the two, “ridiculous” in its answer and suggested a lower sum based on defendant’s own estimates. Mr. Kraus, a representative of defendant, testified that he had obtained an estimate of $435.00 from various subcontractors as the cost to raise the house. However, it is significant that the defendant failed to produce any witness or subcontractor in court to substantiate the fact that the sum of $435.00 is a reasonable estimate to raise the particular house. The trial judge rightfully discarded the self-serving statements of Custom Built Homes in this respect.
The trial court accepted the $1,645.00 figure, and we have found nothing in the record to indicate error in determining this amount. In the absence of a finding of manifest error, the judgment of the trial court will be affirmed. The judgment is affirmed. Costs to be paid by defendant-appellant.
Affirmed.